IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ZUNIGA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JONATHAN G. ZUNIGA, JR., APPELLANT.

Filed May 31, 2022.    No. A-22-065.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Timothy S. Noerrlinger for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Jonathan G. Zuniga, Jr., appeals from an order of the Lancaster County District Court denying his request to transfer his case to the juvenile court. Finding no abuse of discretion by the district court, we affirm.

## II. BACKGROUND

In October 2021, Zuniga was charged with two counts of robbery, both Class II felonies. The charges arose from two separate incidents which occurred in March and May 2021.

During the March 2021 incident, three teens reported being robbed in a parking lot after being lured there by communications via Snapchat for the sale of basketball shoes. The victims reported that their assailants were six black males, one of whom brandished a handgun. The victims were robbed of a wallet containing $200 in cash, gift cards, and credit cards. A Volkswagen sedan, determined to be used by Zuniga, was present at the scene.

- 1 -

During the May 2021 incident, two teens were robbed of electronics including an iPhone, AirPods, money, jewelry, and vape supplies after they were lured to the area by communications via Snapchat to purchase vape pens and accessories. The victims described the assailants as two black males, one of whom brandished a handgun. The victims also reported that the perpetrators punched them in their heads and faces and that the assailants left the scene in a Volkswagen sedan driven by a white male. During an interview with law enforcement officers, Zuniga admitted to being the driver for others during the March and May robberies and being aware of the intentions of his occupants.

In October 2021, Zuniga filed a motion to transfer his case to juvenile court. A hearing thereon was held in December. At the time of the alleged offenses, Zuniga was 16 years old, but at the time of the hearing, Zuniga was 17 years old. Defense counsel called two witnesses: Kara Wilkinson, a juvenile probation officer, and Zuniga's mother. The State did not call any witnesses and offered one exhibit into evidence.

Wilkinson testified that she is routinely tasked with supervising juveniles placed on probation pursuant to Lancaster County juvenile court adjudications. Conditions can include attending school or work, electronic monitoring, therapy, drug testing, curfew, requiring that the probationer not commit any new law violations or use drugs or alcohol, and prohibiting the probationer from associating with certain other individuals. According to Wilkinson, graduated sanctions are available including higher levels of treatment, placement outside the home, and placement at the Youth Rehabilitation Treatment Center for the highest level of supervision available. Wilkinson confirmed that the juvenile court can retain jurisdiction over a juvenile probationer until he or she reaches 19 years of age and that district court judges have the same remedies available to them as juvenile court judges. Wilkinson also stated that the benefit to Zuniga of going to juvenile court is that his case would be sealed if he followed the juvenile court's orders.

Zuniga's mother testified that Zuniga had not previously been charged with an offense in either juvenile or district court and that this was the first time that he had ever been accused of a crime.

The exhibit offered into evidence by the State was admitted into evidence and sealed. The exhibit contained a variety of sections, including Zuniga's prior contacts with police, police reports related to the robberies charged in this case which set forth the facts previously stated, police contact regarding an October 2021 incident in which Zuniga was assaulted, and reports and other information related to a shooting that occurred at the Edgewood movie theater involving individuals known to Zuniga. The exhibit further set forth that Zuniga admitted that he was driving the Volkswagen during the March and May 2021 robberies and that he knew prior to the incidents of the plan to rob the victims.

The district court found that the State had met its burden of proof and overruled Zuniga's motion to transfer his case to the juvenile court. Specifically, the court stated that "[i]n applying the balancing test . . . where 'public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile,' . . . the court finds, in the instant case, that a sound basis does exist for this court to maintain jurisdiction." The details of the district court's consideration of the transfer factors contained in § 43-276 will be provided in our analysis below. Zuniga now appeals the denial of his request to transfer the case to the juvenile court.

## III. ASSIGNMENT OF ERROR

Zuniga assigns as error that the district court abused its discretion in denying his motion to transfer to the juvenile court.

## IV. STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Hunt*, 299 Neb. 573, 909 N.W.2d 363 (2018). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## V. ANALYSIS

Zuniga contends that the district court erred in denying his motion to transfer his case to the juvenile court. He contends that the district court abused its discretion "by giving a disproportionate amount of weight to the nature and circumstances of the offense and failing to give adequate weight to [Zuniga's] age, immaturity, lack of criminal history, and role in the present offense[s]." Brief for appellant at 8. The State contends that the district court considered all of the statutory factors, gave a detailed analysis of its decision to retain jurisdiction, and did not abuse its discretion in denying Zuniga's motion to transfer his case to the juvenile court.

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, the allegations against Zuniga placed him within this category of juvenile offenders, and the State filed the charges against Zuniga in the district court.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal court, a party can move to transfer the case to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Supp. 2021). In the instant case, when Zuniga moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in Neb. Rev. Stat. § 43-276(1) (Cum. Supp. 2020):

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim agrees to participate in restorative justice; (k) whether there

is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court[.]" See § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, the court should employ "a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Stevens*, 290 Neb. 460, 465, 860 N.W.2d 717, 725 (2015). "In order to retain the proceedings, the court need not resolve every factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id*. "The burden of proving a sound basis for retention lies with the State." *Id*.

### 1. FACTORS FAVORING RETENTION

The district court reviewed and analyzed each of the factors contained in § 43-276(1). After reviewing the entirety of that order, we would classify the following factors as factors the district court found weighed in favor of the district court retaining jurisdiction over Zuniga.

#### (a) § 43-276(1)(a) - Type of Treatment Amendable to Juvenile

The district court found that Zuniga's age "does not allow for him to be supervised on probation for a lengthy period of time in Juvenile Court. Due to the seriousness of the charges and the more intensive supervision that can be provided in District Court, this case would be more appropriately resolved in District Court."

#### (b) § 43-276(1)(b) - Evidence of Violence in Alleged Offenses

The district court stated that

> The alleged offenses involve premeditated armed robbery where strangers were lured to a meeting point and struck multiple times with a firearm. [Zuniga] admitted that he participated in the robberies and admitted that he drove to the location knowing what was going to happen.
>
> Any offense involving a firearm is an inherently violent and dangerous crime toward another. The Edgewood shooting demonstrates that [Zuniga's] friends were willing to use their firearms during the commission of these robberies. Either of these alleged offenses could have resulted in a homicide. This factor weighs in favor of the State.

### (c) § 43-276(1)(c) - Motivation for Commission of Offense

The district court found that

[t]here is evidence that the robberies or "licks" were done to get money to buy and then sell marijuana. Another motivation for the offenses is self-aggrandizement as demonstrated by the social media posts showing [Zuniga] with large amounts of cash and marijuana. [Zuniga] knew his actions were wrong and proceeded anyway, making these offenses criminally motivated and a serious display of dangerous and anti-social behavior.

### (d) § 43-276(1)(d) - Age of Juvenile and Others Involved

The court noted that Zuniga was born in September 2004, which made him 16 years old at the time of the alleged offenses and 17 years old at the time of the hearing on the motion to transfer. The court further noted that two of Zuniga's known associates who had "operat[ed] under the same Snapchat robbery plan, were involved in the Edgewood shooting which involved life-threatening injuries to two victims."

### (e) § 43-276(1)(e) - Previous History of Juvenile

The court noted that although Zuniga had not been previously adjudicated in the juvenile court, "[h]is prior law enforcement contacts involved an assault upon another juvenile and shoplifting."

### (f) § 43-276(1)(f) - Juvenile's Best Interests

The court found that

[i]t would be in [Zuniga's] best interest[s] to recognize the seriousness of his offenses and change his behavior. Hopefully, this could be accomplished by [Zuniga] being on probation. However, if sentenced to probation in Juvenile Court, it is unclear whether supervision would be intensive enough and whether two years would be long enough to change his behavior.

### (g) § 43-276(1)(g) - Consideration of Public Safety

The district court found that

[Zuniga's] crimes show that he is a danger to the public. These armed robberies involved complete strangers who were lured to a site and then ambushed to obtain their cash and other property. [Zuniga] continued to associate with the others involved in the robberies after they had been completed and after he knew they had been involved in the Edgewood shooting. His friends, [B.W.] and [X.G.], were contacted by the police gang unit after the Edgewood shooting. [Zuniga's] history with firearms and his association with possible gang members all carry risks to public safety while he is in the community without intense supervision.

[Zuniga] called his mother to testify on his behalf at the hearing. [His mother] testified that [Zuniga] lives with her at her home with her three other children, ages 10, 6,

and 2 months. She admitted that she knows [Zuniga's] father has a criminal record and has been to prison for drug offenses, but she allows [Zuniga] to go with his father whenever he wants to. She confirmed that [Zuniga's] good friends are [B.W.] and [X.G.] This case is the first time she's aware of that [Zuniga] had been involved in a crime. After [Zuniga] was assaulted in October of 2021, she [was] not aware that [Zuniga] and his father refused to cooperate with the police. She believed that [Zuniga] didn't know who attacked him.

### (h) § 43-276(1)(h) - Consideration of Juvenile's Ability to Appreciate Nature and Seriousness of His Conduct

The court stated that "[Zuniga] will be forced to deal with the consequences of his serious behavior if his case is maintained in District Court. There is no indication that [Zuniga] does not have the requisite mental faculties to allow him to do so."

### (i) § 43-276(1)(i) - Best Interests and Security of Public

The district court found that Zuniga would turn 19 in September 2023 which left about 20 months remaining under juvenile court jurisdiction. The court stated that

[t]his factor is significant in this case as it is clear that the juvenile court would have a limited amount of time to work with [Zuniga], if or when there was an adjudication.

If kept in District Court, the Court could have jurisdiction over [Zuniga] for five years on a probationary sentence or longer if incarcerated. In this case, due to the serious nature of the offenses, an extended period of supervision and availability of incarceration is warranted.

There is no evidence before the court that there are any facilities uniquely available to the juvenile court for treatment and rehabilitation of [Zuniga]. To the contrary, Neb. Rev. Stat. § 29-2204(5) provides: "Except when a term of life is required by law, whenever the defendant was under eighteen years of age at the time he or she committed a crime for which he or she was convicted, the court may, in its discretion, instead of imposing the penalty provided for the crime, make such disposition of the defendant as the court deems proper under the Nebraska Juvenile Code."

Thus, the dispositional alternatives available through the Nebraska Juvenile Code are equally available to this court as they would be through the juvenile court, including commitment to the Office of Juvenile Services.

### (j) § 43-276(1)(l) - Conviction or Acknowledged Unauthorized Use or Possession of Firearm

The court stated that

robbery offenses carry mandatory minimum sentences because of the seriousness of the crime. Here [Zuniga] and/or his friends obtained guns illegally and used them to threaten, harm or coerce victims into giving them cash and property. [Zuniga] has acknowledged that he knew what was intended to happen prior to his participation.

We note that the district court erroneously stated that the robbery offenses, which are Class II felonies, carry mandatory minimum sentences. See Neb. Rev. Stat. § 28-324 (Reissue 2016) (robbery; penalty). Class II felonies are punishable by a minimum of 1 year of imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020).

### (k) § 43-276(1)(n) - Gang Membership

The district court found that

Crimes committed by documented or associated gang members should be taken seriously. The crimes committed here are evidence of criminal gang activity. Both [B.W.] and [X.G.], [Zuniga's] friends, were contacted by the police gang unit concerning the firearms used in the Edgewood shooting, which were most likely the same firearms used in the crimes in this case.

### (l) § 43-276(1)(o) - Other Relevant Matters

The court found that

[t]he charges [Zuniga] currently faces could subject him to incarceration for up to 100 years. Each count of Robbery carries a mandatory minimum sentence of one (1) year with a maximum sentence of fifty (50) years. From the evidence, it is clear to the court that the length of time the juvenile court would have to work with [Zuniga] is likely too short. Those same time constraints would not be imposed on this Court.

As indicated earlier, this [Court] would have available to it all of the options that the juvenile court has as well as the time necessary to implement and refine those options. This is extremely significant to this Court in making the decision as to whether this case should be transferred.

The Nebraska Legislature has mandated that the Nebraska Juvenile Code is to be construed "[t]o remove juveniles who are within the Nebraska Juvenile Code from the criminal justice system whenever possible and to reduce the possibility of their committing future law violations through the provision of social and rehabilitative services to such juveniles and their families." Neb. Rev. Stat. § 43-246(3). The Court has considered this intent in its analysis. The Court also considers the seriousness of the offenses alleged in this case, which, while not a determining factor in this analysis, is certainly significant.

We again note that the district court erroneously stated that the robbery offenses, which are Class II felonies, carry mandatory minimum sentences. See § 28-324. Class II felonies are punishable by a minimum of 1 year of imprisonment and a maximum of 50 years' imprisonment. § 28-105.

### 2. FACTORS FAVORING TRANSFER

The district court appeared to find only one factor favored transfer of this matter to the juvenile court. That was pursuant to § 43-276(1)(m) governing whether a prior juvenile court order

had been issued pursuant to Neb. Rev. Stat § 43-2,106.03 (Reissue 2016), the juvenile court noted that no juvenile court order had been issued for Zuniga. The nonexistence of such an order would support a request to transfer to the juvenile court.

### 3. NEUTRAL FACTORS

The district court's order identified two factors in its analysis that it appeared to consider neutral. Those are: (1) § 43-276(1)(j) -- whether the victim or juvenile agree to participate in restorative justice; the district court noted that there was no real possibility of mediation as the victims were "complete strangers" and "the violence was unprovoked"; and (2) § 43-276(1)(k) -- whether a juvenile pretrial diversion program was established; the court noted that the charges were ineligible for juvenile or adult diversion.

### 4. NO ABUSE OF DISCRETION

Although the district court's analysis of factors under § 43-276(1) reveals only one factor favoring transfer to the juvenile court, there is no arithmetical computation or formula required in a court's consideration of the statutory criteria or factors. *State v. Esai P.*, 28 Neb. App. 226, 942 N.W.2d 416 (2020). There are no weighted factors, that is, no prescribed method by which more or less weight is assigned to each factor specified by statute. *Id.* It is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile. *Id.* "This means that a trial court must balance a juvenile's amenability to complete rehabilitation by age 19 against the public's safety in the event that rehabilitation fails or requires more time than anticipated." *State v. Leroux*, 26 Neb. App. 76, 118, 916 N.W.2d 903, 929 (2018).

As we often state in our review of juvenile transfer cases, these are difficult decisions for the trial court and for this court on appeal because of the young age of the defendants. However, a young age by itself does not support a transfer to the juvenile court. See *State v. Esai P., supra* (setting forth cases of defendants as young as 14 or 15 years of age in which criminal proceedings were retained in district court because factors favoring public protection outweighed juvenile's young age, such as involvement with gangs and guns, violent nature of crime, or unlikely success of rehabilitation before juvenile reaches age of majority).

Zuniga argues that, in performing its balancing analysis, the district court simply did not provide sufficient weight to his age, lack of maturity, motivation to commit the crime, his lack of criminal history, and his actual role in the offenses. But in its detailed order, it is clear that the district court did consider those factors. As stated in the order, the district court also considered, and was properly concerned with, the nature of the alleged criminal conduct, the safety of the public, and Zuniga's need for extensive supervision over a period of years and the limited time available to the juvenile court to work with him. Zuniga admitted that he knew about, and participated in, the robberies both of which involved firearms, and that the motivation of the robberies was to obtain money to buy, then sell, marijuana. The court noted that Zuniga had prior law enforcement contacts involving an assault on another juvenile and shoplifting, and that it was in Zuniga's best interests to recognize the seriousness of his behavior and change his behavior

which would likely require more than the two years he would have under the supervision of the juvenile court. The court further stated that the incidents here provided evidence of gang activity.

After reviewing the entirety of the record and the district court's order, we believe this case falls within the category of the "theme" this court expressed in *State v. Leroux, supra*. After summarizing numerous cases and their holdings, which we will not repeat here, this court held:

> The theme evident in the cases discussed above is this: When a juvenile commits a violent crime, the trial court is not likely to grant a request to transfer to the juvenile court because (1) the juvenile court will lose jurisdiction when the defendant turns 19 years of age which may not allow sufficient time for the complete rehabilitation of the juvenile, and therefore retention is necessary to ensure public safety, and (2) there is no secure youth detention facility available which can safely provide the appropriate services and treatment for a juvenile who has committed a more serious offense. This means that a trial court must balance a juvenile's amenability to complete rehabilitation by age 19 against the public's safety in the event that rehabilitation fails or requires more time than anticipated. The trial court's decision carries the consequence that if the decision is wrongly made, we have either missed an opportunity to rehabilitate a juvenile outside the negative influences of adult incarceration or failed to adequately incarcerate a potentially dangerous juvenile who will go on to commit further violent crimes. . . .
>
> While in some of the cases discussed above, the aggressive, violent, or premeditated nature of the offense combined with the mental health or historic behaviors of the juvenile were such that it was clear that the services, facility options, and age limit of the juvenile system could not safely house and rehabilitate the juvenile before the juvenile court would lose jurisdiction. In the instant case, it is less clear. Although the district court found many of the statutory factors favored transferring [the defendant] to the juvenile court, the court weighed more heavily its concerns for public safety, namely, that the time left to treat [the defendant] under the juvenile court's jurisdiction would not be sufficient and the security and services at the YRTC would not be adequate for someone convicted of more serious crimes, such as the ones at issue here.

*State v. Leroux*, 26 Neb. App. 76, 118-19, 916 N.W.2d 903, 929 (2018).

The district court similarly concluded here that in light of the serious, violent nature of the alleged crimes involved, "[t]here is no evidence before the court that there are any facilities uniquely available to the juvenile court for treatment and rehabilitation of [Zuniga]." And ". . . if sentenced to probation in Juvenile Court, it is unclear whether supervision would be intensive enough and whether two years would be long enough to change his behavior." The district court clearly weighed the issues of rehabilitation against the threat of public safety here finding that "[Zuniga's] crimes show that he is a danger to the public. These armed robberies involved complete strangers who were lured to a site and then ambushed to obtain their cash and other property." And "[Zuniga's] history with firearms and his association with possible gang members all carry risks to public safety while he is in the community without intense supervision." After weighing these factors and the others previously discussed here, the district court ultimately concluded that Zuniga's motion to transfer should be denied.

Although we might differently categorize certain factors determined by the district court as weighing against transfer, we cannot say the court's basis for retaining jurisdiction over Zuniga was not supported by appropriate evidence. When a district court's basis for retaining jurisdiction over a juvenile is supported by appropriate evidence, it cannot be said the court abused its discretion in refusing to transfer the case to juvenile court. *State v. Leroux, supra*. Given the evidence in this case, the majority of which supports the State's burden of proving a sound basis for retention, we cannot say the district court abused its discretion in declining to transfer Zuniga's case to juvenile court.

## VI. CONCLUSION

Finding no abuse of discretion by the district court in its decision to retain jurisdiction over Zuniga, we affirm the district court's order denying Zuniga's motion to transfer the proceedings to juvenile court.

AFFIRMED.